IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>THE STATE OF WASHINGTON,<br><br>    Plaintiffs,<br><br>    v.<br><br>KING COUNTY, WASHINGTON,<br><br>    Defendant. | Civil Action No. 2:13-cv-677 |

**FIRST MATERIAL MODIFICATION TO CONSENT DECREE**

  WHEREAS, the United States of America ("United States"), the State of Washington ("the State"), and King County, Washington ("the County") are Parties to the Consent Decree entered by this Court on July 3, 2013 (ECF No. 6);

  WHEREAS, the Parties entered into a Non-Material Modification to the Consent Decree on October 25, 2016, and filed such with the Court, authorizing the County to select a joint combined sewer overflow ("CSO") project with the City of Seattle ("the City") to control two of the County's outfalls (ECF No. 7);

  WHEREAS, the County has completed construction of ten of the seventeen CSO Control Measures required by the Consent Decree and has commenced construction of two of the remaining CSO Control Measures;

  WHEREAS, on October 28, 2019, the County formally requested that the U.S. Environmental Protection Agency ("EPA") and the Washington Department of Ecology

1

("Ecology") agree to modify the Consent Decree because of unexpected increases in CSO volumes requiring control and unexpected planning and implementation challenges due, in part, to climate change and variability of location, duration, and intensity of weather events;

WHEREAS, EPA and Ecology agreed to entertain specific modification requests from the County, and the Parties began informal negotiations to clarify the scope and content of potential modifications;

WHERAS, the Parties continued informal negotiations for several years until EPA and Ecology requested additional supporting documentation on March 15, 2022;

WHEREAS, on November 18, 2022, the County submitted its specific modification requests and supporting documentation. The County sought Material Modifications to the descriptions, design criteria, and critical milestone dates of five CSO Control Measures detailed in Appendix B due to significantly greater CSO volumes requiring control than the Parties anticipated when they entered into the Consent Decree. These modifications clarify certain terms and allow for adaptive management of planned CSO Control Measures due, in part, to the impact of climate change and variability of weather events, and in particular, the need to manage larger volumes of stormwater run-off than anticipated;

WHEREAS, the Parties resumed negotiations to reach agreement on modifications to the Consent Decree based on the County's request;

WHEREAS, the Parties entered into a second Non-Material Modification to the Consent Decree on May 9, 2023, not filed with the Court, authorizing the County to provide notifications, submissions, or other communications required by the Consent Decree by email or mail, with a preference for email;

WHEREAS, the Parties have agreed, pursuant to Paragraph 104 of the Consent Decree, to the material modifications to the Consent Decree detailed herein;

WHEREAS, this First Material Modification made herein constitutes a material change to the Consent Decree, requiring Court approval under Paragraph 104 of the Consent Decree; and

WHEREAS, the Parties recognize, and the Court by entering this First Material Modification finds, that this Modification has been negotiated by the Parties in good faith and that this Modification is fair, reasonable, and in the public interest.

NOW THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1. Except as specifically modified herein, all provisions of the Consent Decree entered by this Court on July 3, 2013 (ECF No. 6) shall remain unchanged and in full force and effect.

2. The deadline to obtain Construction Completion of all CSO Control Measures shall be modified to December 31, 2037.

3. Paragraph 9(w) shall be replaced with the following:

> "Performance Criteria" shall mean either, (a) for CSO Outfalls, achieving Controlled status for each CSO Outfall; or (b) for CSO treatment plants, meeting all NPDES Permit requirements and State water quality standards.

4. Paragraph 9(dd) shall be replaced with the following:

dd) "Twenty-Year Moving Average" or "20-Year Moving Average" shall mean the average number of untreated discharge events per CSO Outfall over a twenty-year period and is the averaging period used to assess compliance with the State's CSO "control" standard of "greatest reasonable reduction" defined in WAC 173-245-020(22). The Twenty-Year Moving Average will be calculated at least annually and reported in the County's Annual Report. The number of discharge events per year shall be based on representative monitoring records. For years where monitored data do not exist (e.g., during CSO control project design) or are not representative (e.g., due to the completion of CSO reduction projects; non-capital modifications; operational adjustments), the number of discharge events per year shall use the predicted discharge frequency as calculated through modeling. The model for each CSO Outfall shall be established by the LTCP or approved engineering report for CSO control project design and be based on historical rainfall data, hydraulic information (including climate change projections), and the control project design expected efficacy.

5. The following definition shall be added as new Paragraph 9(gg):

gg) "Optimization" shall mean the application of adjustable controls, operational improvements, or capacity modifications to achieve improved flow management with limited capital modifications to the system. Examples include but are not limited to: installing or adjusting controls for gates or pump stations; using additional monitoring locations to refine control settings; modifying weir elevations; and adding conveyance capacity to resolve a localized capacity limitation. The primary objective is to maximize the use of available storage and conveyance capacities more rapidly and effectively than typical capital projects.

6. Paragraph 15 shall be replaced with the following:

15. King County shall construct and implement the CSO Control Measures in accordance with the Performance Criteria and the descriptions, Design Criteria, and the dates for submission of engineering reports, Completion of Bidding, and Construction Completion for each CSO Control Measure as set forth in Appendix B.

7. Paragraph 17 shall be replaced with the following:

17. After two complete wet seasons (each spanning the period October 1 – April 30) following Construction Completion of each CSO Control Measure identified in Appendix B that are associated with CSO Outfalls numbers 028, 029, 030, 032, 036, 039, and 041 at the County's new satellite CSO treatment plants, the County shall document, in its Annual Report submitted pursuant to Section VIII, whether these CSO satellite treatment plants and associated CSO Outfalls meet the effluent limits in the County's NPDES Permit and State water quality standards. The first complete wet season shall begin October 1 after Construction Completion. If one of these new satellite CSO treatment plants and associated CSO Outfalls does not meet the effluent limits in the County's NPDES Permit or State water quality standards within this timeframe, the County shall submit to EPA and the State for their approval a Supplemental Compliance Plan as set forth in Paragraph 20 below. This Supplemental Compliance Plan shall be submitted not later than January 30 of the year following the year in which the second wet season concludes.

8. Paragraph 18 shall be replaced with the following:

18. After two complete wet seasons (each spanning the period October 1 – April 30) following Construction Completion of each CSO Control Measure identified in Appendix B that addresses all remaining CSO Outfalls other than CSO Outfalls numbers 028, 029, 030, 032, 036, 039, and 041, the County shall document, in its Annual Report submitted pursuant to Section VIII, whether these CSO Outfalls are Controlled. The first complete wet season shall begin October 1 after Construction Completion. If one of these CSO Outfalls is not Controlled within this timeframe, the County shall submit to EPA and the State for their approval a Supplemental Compliance Plan as set forth in Paragraph 20 below. This Supplemental Compliance Plan shall be submitted not later than January 30 of the year following the year in which the second wet season concludes.

9. Paragraph 20 shall be modified to add the following to the end of the paragraph:

CSO Outfall Corrective Actions Report(s) submitted in accordance with NPDES Waste Discharge Permit No. WA0029181 shall satisfy the requirements for the Supplemental Compliance Plan described in this Paragraph.

10. Paragraph 21 shall be replaced with the following:

21. <u>Proposed Revisions to CSO Control Measures and Design Criteria:</u> The County may propose a revision to a CSO Control Measure, or to the Design Criteria for a CSO Control Measure, for a CSO control project listed in Appendix B by submitting a proposal to EPA and Ecology for review and approval (in accordance with the review procedures detailed within Section VI) by no later than the date of submission of the engineering report for the subject CSO control project.

(a) Any request by the County for proposed modification of a CSO Control Measure or Design Criteria made pursuant to this Paragraph shall be made in writing to EPA and the State pursuant to Paragraph 85, with all documentation necessary to support the request for proposed modification, including all information relevant to the five criteria set forth below. The County shall provide such additional information requested by the United States or the State as is necessary to assist in evaluating the County's modification request. Any such proposal shall also include:

   (i) Detailed project information, such as the size and length of new sewer lines, sewer infrastructure rehabilitation, inflow source reduction or storage capacity; the volume of storage, or scope of sewer separation activities; and the anticipated discharge volume reduction;

   (ii) An implementation schedule for completion of the revised and/or alternative CSO Control Measure, or for the CSO Control Measure with revised and/or alternative Design Criteria, by the same Construction Completion date for the CSO Control Measure set forth in Appendix B;

   (iii) A demonstration that the revised and/or alternative CSO Control Measure or Design Criteria will meet or exceed the Performance Criteria;

   (iv) A description of the public engagement process concerning the revised and/or alternative CSO Control Measure or Design Criteria; and

   (v) A demonstration that the proposed revision of or change in CSO Control Measure or Design Criteria will not cause any adverse impacts to sensitive water bodies or beneficial uses of affected waters, or any disproportionate impact on any one or more geographic areas.

(b) EPA and State approval of proposed revised and/or alternative CSO Control Measures or Design Criteria consistent with subparagraph (a) above shall be considered a non-material modification for the purposes of Section XIX of this Consent Decree; provided, however, that, if EPA and the State approve a change to the type of CSO Control Measure that is not already included as an option for that CSO control project in Appendix B (e.g., using treatment instead of storage when treatment is not listed as an option in Appendix B), this shall be considered a material modification and shall not be effective until it is approved by the Court in accordance with Paragraph 104 of this Consent Decree. Any such proposed material modification of this Consent Decree shall, furthermore, be subject to public notice and comment pursuant to 28 C.F.R. § 50.7. The United States and

the State reserve their rights to withdraw or withhold their consent to any such proposed modification of this Consent Decree if public comments received disclose facts or considerations that indicate that the modification would be inappropriate, improper, or inadequate.

(c) If EPA and the State disapprove the County's proposed modification, the County may invoke Informal Dispute Resolution in accordance with Paragraph 78. The Formal Dispute Resolution and judicial review procedure set forth in Paragraphs 79 to 83 shall not apply to proposals for modification of CSO Control Measures or Design Criteria submitted pursuant to this Paragraph.

> (i) If the dispute is not resolved by Informal Dispute Resolution, then the position advanced by the United States shall be considered binding; provided that the County may, within thirty (30) days after the conclusion of the Informal Dispute Resolution Period, appeal the decision to the Director of the Enforcement and Compliance Assurance Division, EPA Region 10.

> (ii) The Director of the Enforcement and Compliance Assurance Division, EPA Region 10 may approve or disapprove, or approve upon conditions or in a revised form, the proposed modification. The determination of the Director shall be in her/his discretion and shall be final. The County reserves the right to file a motion seeking relief in accordance with Federal Rule of Civil Procedure 60(b).

11. In Paragraph 33, the period for the County, in coordination with the City of Seattle, to review the Joint Plan shall be modified from every three years to every five years. Furthermore, Paragraph 33 shall be modified to add the following to the end of the paragraph:

> The County and the City shall engage in a Coordinated Optimization Evaluation ("COE") as part of the next update of the Joint Plan. The COE is a significant effort that will identify and evaluate optimization opportunities that reduce CSOs by taking advantage of potential capacities through improving system-wide or basin specific controls and/or by installing new minor system components. The COE will also inform development of the County's and City's Long Term Control Plan Updates and project engineering reports.

12. Paragraph 43(a) shall add the following as new item (v) in the list of the items to be included in the County's Annual Report:

> (v) the Twenty-Year Moving Average for each CSO Outfall, as required by Paragraph 9(dd).

13. Paragraph 58 shall be replaced with the following:

> 58. <u>Failure to Comply with Effluent Limits.</u> The following stipulated penalties shall accrue for each failure to comply with the following numerical effluent limits imposed by the County's NPDES permit for CSO Outfalls # 027b (Elliott West CSO Treatment Plant), 044 (MLK/Henderson CSO Treatment Plant), 046 (Carkeek CSO Treatment Plant), 051 (Alki CSO Treatment Plant, excluding CSO Outfall #001 for the West Point Wastewater Treatment Plant), 058 (Georgetown CSO Treatment Plant), and any future CSO treatment plant constructed to control outfalls included in Appendix B and subject to numeric effluent limits:
>
> | Parameter | Stipulated Penalty |
> |---|---|
> | Total Suspended Solids removal efficiency | $10,000 per annum |
> | Fecal Coliform geometric mean | $2,000 per month |
> | Settleable Solids (annual average) | $10,000 per annum |
> | Total Residual Chlorine (maximum daily) | $2,000 per day |
> | Other annual numeric effluent limits | $10,000 per annum per limit |
> | Other non-annual numeric effluent limits | $2,000 per violation per day |

14. In Paragraph 117, the description of Appendix D shall be modified to the following:

> "Appendix D" is the Joint Operations and System Optimization Plan and Coordinated Optimization Evaluation Between the City of Seattle and King County;

15. The "Status" column in Appendix A shall be changed to "2012 Status." The following language shall be added to the footnote to "2012 Status":

> Outfall control status is reported annually in the County's CSO Annual Report.

16. Appendix B shall be replaced with the following:

**APPENDIX B: CSO Control Measures, Design Criteria, and Critical Milestones**

| CSO Control Project and Discharge Serial Number (DSN) | CSO Control Measure(s) | Design Criteria | Critical Milestones [1,3] |
|---|---|---|---|
| Hanford #1 (DSN 031) | Increased Conveyance and Storage Tank | 0.34 MG of peak CSO storage with conveyance | • Submission of Engineering Report by December 31, 2014 [Completed]<br>• Completion of Bidding by December 31, 2016 [Completed]<br>• Construction Completion by December 31, 2019 [Completed] |
| Brandon St./ S. Michigan St. (DSN 041/ 039) | CSO Treatment and Conveyance | 66 MGD of peak CSO treatment and new conveyance system | • Submission of Engineering Report by December 31, 2015 [Completed]<br>• Completion of Bidding by December 31, 2017 [Completed]<br>• Construction Completion by December 31, 2022 [Completed] |
| 3rd Avenue West (DSN 008) | Joint City-County Storage Tunnel | 29 MG tunnel, of which 4.18 MG of peak CSO storage attributable to County's 3rd Avenue West site | • Construction Completion by December 31, 2027 |
| 11th Ave. NW (DSN 004) | Joint City-County Storage Tunnel | 29 MG tunnel of which 1.85 MG of peak CSO storage attributable to County's 11th Avenue NW site | • Construction Completion by December 31, 2027 |
| W. Michigan St./ Terminal 115 (DSN 042/ 038) | Storage Tank | 1.25 MG of peak CSO storage | • Submission of Engineering Report by December 31, 2020 [Completed]<br>• Completion of Bidding by December 31, 2026<br>• Construction Completion by December 31, 2029 |

9

| CSO Control Project and Discharge Serial Number (DSN) | CSO Control Measure(s) | Design Criteria | Critical Milestones [1,3] |
|---|---|---|---|
| Mouth of Duwamish CSO Control Project (DSN 036/ 032/ 030/ 029/ 028) | CSO Treatment *or* CSO Storage and CSO Treatment *or* CSO Storage Facility | 190 MGD of peak CSO treatment and modifications to existing conveyance system *or* 6 MG of peak CSO storage and 170 MGD of peak CSO treatment and modifications to existing conveyance system *or* 150 MG of peak CSO storage | • Submission of Engineering Report by December 31, 2026<br>• Completion of Bidding[2] by July 31, 2029<br>• Construction Completion by December 31, 2034 |
| University (DSN 015) | Storage Facility *or* Storage Facility to manage consolidated control volumes associated with University and Montlake planning areas (DSN 015/014) | 16.1 MG of peak CSO storage *or* 24 MG of peak CSO storage | • Submission of Engineering Report by December 31, 2029<br>• Completion of Bidding[2] by December 31, 2032<br>• Construction Completion by December 31, 2037 |
| Montlake (DSN 014) | Storage Facility *or* Storage Facility to manage consolidated control volumes associated with University and Montlake planning areas (DSN 015/014) | 11 MG of peak CSO storage *or* 24 MG of peak CSO storage | • Submission of Engineering Report by December 31, 2029<br>• Completion of Bidding[2] by December 31, 2032<br>• Construction Completion by December 31, 2037 |

| Footnote | Description |
|---|---|
| 1 | All engineering reports submitted must comply with the requirements of WAC 173-240-060. |
| 2 | "Completion of Bidding" for these CSO Control Projects shall be achieved when the County has accepted and awarded the bid for the first project component. |
| 3 | The City and County shall submit concurrent modification requests for changes to critical milestones on projects that are intended to control both City and County outfalls. |

17. Appendix D shall be revised as follows:

**APPENDIX D: Joint Operations and System Optimization Plan and Coordinated Optimization Evaluation Between the City of Seattle and King County**

A. Paragraph 1's references to the preparation of the Joint Operations and System Optimization Plan shall be in the past tense, such that the fourth through sixth sentences of Paragraph 1 shall read:

> The County worked with the City of Seattle in jointly preparing a Joint Operations and System Optimization Plan ("Joint Plan") for the City's Wastewater Collection System and those interdependent portions of King County's regional wastewater conveyance and treatment system that are hydraulically connected to the City's system. The result of this effort was development of a Joint Plan that is consistent with both entities' operational objectives, ensures the optimal level of coordination and information sharing is maintained, and optimizes system and joint operations between both entities. The Joint Plan describes a procedure for operating their existing systems and includes a process for incorporating the Joint Plan into the design of new capital projects for the combined systems.

B. A new Paragraph 2 shall be added as follows:

> 2. The County and the City continue to work together to ensure both systems are utilized to their full potential without adversely affecting the other. Prior work includes installing real-time data sharing between facilities, wet season preparedness meetings, gate optimizations, and a live shared overflow tracking website. These efforts are in part a result of the commitments made by each agency in the Joint Plan.

C. The first sentence of what will now be Paragraph 3 shall read: The Joint Plan Updates shall continue to include, but not be limited to, the following items:

11

D.    Item 3(k) is changed to reflect that updates to the Joint Plan must be made every five years instead of every three years.

E.    A new Paragraph 4 shall be added as follows:

> 4.    The next update to the Joint Plan will be submitted to EPA and the State by March 1, 2027. The Update will include the results of the Coordinated Optimization Evaluation, which will be initiated in 2023, and any optimization actions implemented as of March 1, 2027. The Coordinated Optimization Evaluation will include the following elements:
>
> > a.    Opportunities to strategically remove stormwater and infiltration and inflow from the County's and City's collection systems;
> >
> > b.    Opportunities to optimize the use of available capacity to maximize use of existing collection system transport, storage, and treatment infrastructure for wastewater flows, including wet weather flows;
> >
> > c.    Opportunities for coordinated operation of the County's and City's combined sewer systems including the potential use of real-time controls that can react and/or anticipate wet weather conditions and assessing controls for greater capacity through operational changes and minor system improvements; and
> >
> > d.    Definition of planning parameters for future Long Term Control Plan Updates and project engineering reports.

18.    The effective date of this Modification shall be the date upon which this Modification is entered by the Court or the motion to enter this Modification is granted, whichever occurs first, as recorded on the Court's docket.

19.    This Modification shall be lodged with this Court for a period of at least thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding this Modification disclose facts or considerations indicating that this Modification is inappropriate, improper, or inadequate. The County consents to entry of this Modification as proposed without further notice

and agrees not to withdraw from or oppose entry of this Modification by the Court or to challenge any provision of this Modification, unless the United States or the State has notified the County in writing that the United States or the State no longer supports entry of this Modification.

20. Each undersigned representative of the County, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, on behalf of the United States, certifies that he or she is fully authorized to enter into the terms and conditions of this Modification and to execute and legally bind the Party he or she represents to this Modification.

21. This Modification to the Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to this Modification to the Consent Decree, and this Modification supersedes all prior agreements and understandings, whether oral or written, concerning the Modification embodied herein.

22. This Modification may be executed in counterparts, and its validity shall not be challenged on that basis.

Dated and entered this 22nd day of May, 2025.

_____
JOHN C. COUGHENOUR
SENIOR UNITED STATES DISTRICT JUDGE

The undersigned hereby consents and certifies that he or she is authorized to consent to the terms and conditions of this First Material Modification to the Consent Decree in the matter of *United States of America and the State of Washington v. King County, Washington*, No. 2:13-cv-677 (W.D. Wash.).

FOR PLAINTIFF UNITED STATES OF AMERICA:

    TODD KIM
    Assistant Attorney General
    United States Department of Justice
    Environment and Natural Resources Division

    /s/ *Danica Anderson Glaser*              Date: November 14, 2024
    DANICA ANDERSON GLASER
    Senior Counsel
    United States Department of Justice
    Environment and Natural Resources Division
    Environmental Enforcement Section
    P.O. Box 7611
    Washington, DC 20044

    TESSA M. GORMAN
    United States Attorney
    Western District of Washington

By:    /s/ *Brian C. Kipnis*                   Date: November 14, 2024
    BRIAN C. KIPNIS
    Assistant United States Attorney
    Office of the United States Attorney
    Western District of Washington
    700 Stewart Street, Suite 5220
    Seattle, WA 98101-1271

The undersigned hereby consents and certifies that he or she is authorized to consent to the terms and conditions of this First Material Modification to the Consent Decree in the matter of *United States of America and the State of Washington v. King County, Washington*, No. 2:13-cv-677 (W.D. Wash.).

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

JOSEPH THEIS
Digitally signed by JOSEPH THEIS
Date: 2024.06.19 09:44:08 -04'00'

_____   Date:_____
JOSEPH G. THEIS
Acting Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

HANNAH ANDERSON
Digitally signed by HANNAH ANDERSON
Date: 2024.06.20 08:44:10 -04'00'

_____   Date:_____
HANNAH C. ANDERSON
Attorney, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

The undersigned hereby consents and certifies that he or she is authorized to consent to the terms and conditions of this First Material Modification to the Consent Decree in the matter of *United States of America and the State of Washington v. King County, Washington*, No. 2:13-cv-677 (W.D. Wash.).

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION 10:

**CASEY SIXKILLER**
Digitally signed by CASEY SIXKILLER
Date: 2024.11.05 16:46:45 -08'00'

Date:_____

CASEY SIXKILLER
Regional Administrator
United States Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

**EDWARD KOWALSKI**
Digitally signed by EDWARD KOWALSKI
Date: 2024.11.05 12:36:59 -08'00'

Date:_____

EDWARD J. KOWALSKI
Director, Enforcement and Compliance Assurance Division
United States Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

**BEVERLY LI**
Digitally signed by BEVERLY LI
Date: 2024.11.05 12:59:25 -08'00'

Date:_____

BEVERLY F. LI
Regional Counsel
United States Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

**Yackulic, Ted**
Digitally signed by Yackulic, Ted
Date: 2024.11.05 10:33:44 -08'00'

Date:_____

TED YACKULIC
Assistant Regional Counsel
United States Environmental Protection Agency
Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

The undersigned hereby consents and certifies that they are authorized to consent to the terms and conditions of this First Material Modification to the Consent Decree in the matter of *United States of America and the State of Washington v. King County, Washington*, No. 2:13-cv-677 (W.D. Wash.).

FOR THE STATE OF WASHINGTON:

ROBERT W. FERGUSON
Attorney General

By: _____   Date: November 5, 2024
ADAM L. LEVITAN, WSBA #59818
Assistant Attorney General
Attorneys for State of Washington
Washington Department of Ecology
2425 Bristol Ct., SW
Olympia, WA 98504


_____   Date: November 5, 2024
LAURA WATSON
Director
Washington Department of Ecology
P.O. Box 47600
Olympia, WA 98504-7600

The undersigned hereby consents and certifies that he or she is authorized to consent to the terms and conditions of this First Material Modification to the Consent Decree in the matter of *United States of America and the State of Washington v. King County, Washington*, No. 2:13-cv-677 (W.D. Wash.).

FOR KING COUNTY, WASHINGTON:

*[signed] For* — John Taylor, Director, KCDNAP    Date: 8/12/2024

DOW CONSTANTINE
King County Executive
King County Chinook Building
401 5th Ave. Suite 800
Seattle, WA 98104


LEESA MANION
King County Prosecuting Attorney


By: *[signed] Kimberly Frederick*    Date: 8-13-2024
KIMBERLY FREDERICK, WSBA #37857
Chief Civil Deputy, Civil Division
701 5th Avenue, Suite 600
Seattle, WA 98104